IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GABRIEL BLACK, | ) | |
| Petitioner, | ) | No. C 08-1151 CRB (PR) |
| | ) | |
| vs. | ) | ORDER  DENYING |
| | ) | PETITION FOR A WRIT OF |
| MICHAEL MARTEL, Acting Warden, | ) | HABEAS CORPUS |
| | ) | |
| Respondent. | ) | |
| | ) | |

        Petitioner, a state prisoner at Mule Creek State Prison in Ione, California,
seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction
from Santa Clara County Superior Court.  For the reasons set forth below, a writ
of habeas corpus will be denied.

**STATEMENT OF THE CASE**

        On August 27, 2004, a jury convicted petitioner of committing a lewd and
lascivious act upon a child under the age of fourteen.  Cal. Pen. Code § 288(a).
The court found true that petitioner had suffered four prior strike convictions and
one prior serious felony conviction and, on January 5, 2005, pursuant to
California's Three Strikes Law, sentenced petitioner to thirty years to life in state
prison.

On March 2, 2006, the California Court of Appeal affirmed the judgment of the trial court and, on May 10, 2006, the Supreme Court of California denied review.

On November 28, 2006, petitioner filed a petition for a writ of habeas corpus  in the California Court of Appeal.  It was denied on December 21, 2006.

On March 1, 2007, petitioner filed a petition for a writ of habeas corpus in the Supreme Court of California.  It was denied on July 18, 2007.

On February 27, 2008, petitioner filed the instant petition for a writ of habeas corpus.   The court found that the petition appeared to state cognizable claims under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent has filed an answer to the order to show cause and petitioner has filed several traverses.

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the facts of the case as follows:

> In March of 2004, 10-year-old J. lived in a house in San Jose with her mother, her father (defendant), her five-year-old brother and two half-sisters, A. who was older than J., and L., who was younger. Defendant and mother had been married since 1997, but they had on-going marital problems and separations.  There was fighting and conflict in the household.  At that time, defendant slept apart from mother either on a couch or in the children's bedrooms. Sometimes defendant slept in a bed with J.

> One weekend night in March, J. went to bed alone in the bedroom she shared with her younger sister L.  In the middle of the night, J. woke up and saw defendant leaving the bedroom, although he had not been there when she went to bed.  Very early the next morning, J. awakened because she felt something poking her back. She thought it was her cat, and put her hand back to brush it away, but felt nothing.  She fell back to sleep.  When J. woke up again, she found her hand on defendant's penis; he was in her bed on his back.  Defendant's hand was on her hand, moving it up and down. Defendant had on boxer shorts and pants, and her hand was over his boxer shorts on his erect penis.  J. could see part of his penis sticking out of his clothing, and she said it was "like hard and there was hair."  J. took her hand away and ran into the living room.  She

2

recalled that defendant said good morning to her in a normal tone of voice.

J.'s siblings were in the living room watching television, and so she sat under a blanket next to her sister. Defendant also came into the living room and sat on a couch. Sometime later, J. and one sister planned to go to 7-Eleven, but defendant came with them. Later in the day, the two youngest children were playing and ran outside without their shoes. Defendant got angry and yelled at them. He hit L. and sent her to her bedroom. J. thought her father had overreacted. She was upset and tried to intervene, but he forcibly put her in the bedroom too. J. was angry and said defendant should leave the house and not be living there.

When the girls were in the bedroom, J. told L. that defendant made her put her hand on his private part while she was in bed. J. then called A. (her older sister) into the bedroom. A. later testified that J. had a "weird expression on her face" and "looked upset." J. told A. that defendant put her hand on his private area that morning in the bedroom. A. then found their mother and told her to go talk to J. Their mother went into the bedroom and found J. upset and angry. J. told her what had happened with defendant and said she did not want her mother to talk to defendant about it. Her mother was shocked at what J. told her; she was not sure what to do. After an hour, she confronted defendant, but he denied doing anything. She told him she believed J. and told him to leave. At trial, she testified that defendant had a strange look on his face and said, "'She was all over me today.'" Defendant then left the house and J.'s mother called the police.

Two police officers responded and interviewed family members. When Officer Mason was interviewing A., defendant called the house. He then returned home and was arrested. Officer Rosendin briefly interviewed J. who was sobbing when he first arrived. He described her as withdrawn and a little nervous and scared. J. told him that about 7:00 that morning, she had awakened to see her father standing over her, with his erect penis sticking out of his unzipped pants while he moved her hand back and forth on it. Later that night, a police detective conducted a videotaped interview with J., but it was not admitted at trial, apparently due to redaction problems.

At trial, J. testified that she had learned about private body parts and sexual activity from her mother and older sister, and also from family life classes at school. She had learned about good touches and bad touches as well. J. said she knew that it was a bad touch if a man had her touch his penis, and he could get in trouble for it. Defendant did not testify at trial.

People v. Black, No. H028363, 2006 WL 497758, at **1-2 (Cal. Ct. App. Mar. 2, 2006) (footnotes omitted).

3

**STANDARD OF REVIEW**

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A petition for a writ of habeas corpus may not be granted unless the petitioner has exhausted state judicial remedies by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim he seeks to raise in federal court.  Id. § 2254(b)-(c); Rose v. Lundy, 455 U.S. 509, 515-16 (1982).  But a petition may be denied on the merits even if unexhausted.  28 U.S.C. § 2254(b)(2).

**CLAIMS & ANALYSIS**

Petitioner raises two claims for relief under § 2254: (1) his sentence of thirty years to life amounts to cruel and unusual punishment in violation of the Eighth Amendment; and (2) the trial court failed to consider evidence of a cell phone and two sets of clothes that would have cast "reasonable doubt" on his guilt.  Respondent argues that the claims are unexhausted, but should be denied on the merits because they are clearly meritless.  The court agrees.

1.    Cruel and Unusual Punishment

Petitioner claims that his sentence of thirty years to life, pursuant to California's Three Strikes Law, is cruel and unusual punishment in violation of the Eighth Amendment.

The claim is unexhausted because petitioner did not include it in either his petition for direct review, or his petition for a writ of habeas corpus, to the Supreme Court of California.  See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (state's highest court must be given opportunity to rule on claims even if

4

review is discretionary).  His brief statement in his petition for a writ of habeas corpus to the state high court – "Involuntary manslaughter . . . carries a lesser penalty" – does not compel a different conclusion because petitioner did not elaborate on the legal basis of his assertion, cite the Eighth Amendment or otherwise indicate that he was raising a federal constitutional claim of cruel and unusual punishment.  See Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("For purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.").  The claim will denied on the merits because it is clearly meritless.  See 28 U.S.C. § 2254(b)(2); see also Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005) (unexhausted claim should be dismissed only when not colorable).

"The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing v. California, 538 U.S. 11, 23 (2003).  A sentence will be found grossly disproportionate only in "exceedingly rare" and "extreme" cases.  Lockyer v. Andrade, 538 U.S. 63, 73 (2003).

In determining whether a sentence is grossly disproportionate under a recidivist sentencing statute, such as California's Three Strikes Law, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004).  In Ramirez, the Ninth Circuit held that a sentence of twent-five years to life upon conviction of petty theft with prior convictions was grossly disproportionate to the current crime where the previous two strikes did not involve violence and where both strikes were the result of one negotiated plea resulting in a one-year county jail sentence.  365 F.3d at 767-770.  The court

noted that this was the "extremely rare case that gives rise to an inference of gross disproportionality." Id. at 770.  By contrast, in Rios v. Garcia, the Ninth Circuit held that a sentence of twenty-five years to life upon conviction of petty theft with prior convictions was not grossly disproportionate.  Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004).  The Ninth Circuit distinguished Ramirez because the defendant in Rios struggled with a guard to prevent apprehension, his prior convictions of robbery "involved the threat of violence, because his cohort used a knife" and because the defendant had a lengthy criminal history.  Id.; accord Andrade, 538 U.S. at 76 (upholding sentence of two consecutive terms of 25-years-to-life for recidivist convicted of two counts of petty theft with a prior theft conviction and who had four prior "strike" convictions for burglary).

Petitioner in the instant case was sentenced pursuant to California's Three Strikes Law, which is triggered when a defendant is convicted of a felony, and he has suffered one or more prior "serious" or "violent" felony convictions.  See Cal. Penal Code § 667(e)(2)(A).  Under California's Three Strikes Law, any felony conviction can constitute the third strike and subject a defendant to a term of twenty-five years to life in prison.  Andrade, 538 U.S. at 67.

Petitioner's triggering offense was committing a lewd and lascivious act upon a child under the age of fourteen, in violation of the California Penal Code section 288(a), properly charged as a felony under California law.  See Cal. Penal Code § 1192.7(c)(6).  The prior convictions that were alleged as "strikes" were assault with a deadly weapon involving the personal infliction of great bodily injury, false imprisonment, second degree burglary with an arming enhancement and kidnapping.  Based on the gravity of petitioner's triggering offense and his history of criminal recidivism, which includes multiple crimes of violence, his sentence cannot be said to be grossly disproportionate in violation of the Eighth

Amendment.  See Rios, 390 F.3d at 1086; see also Cacoperdo v. Demosthenes,
37 F.3d 504, 508 (9th Cir. 1994)  (sentence of ineligibility for parole for 40 years
not grossly disproportionate when compared with gravity of sexual molestation
offenses).  Petitioner is not entitled to federal habeas relief on this Eighth
Amendment claim.

> 2.    Exclusion of Evidence

Petitioner claims that the trial court failed to consider evidence of a
cell phone and two sets of clothes that would have cast "reasonable doubt" on his
guilt.  According to petitioner, his daughter touched his cell phone, not his erect
penis, and he was always fully clothed because he had on two sets of clothes.

The claim is unexhausted because petitioner did not include it in either his
petition for direct review, or his petition for a writ of habeas corpus, to the
Supreme Court of California.  See O'Sullivan, 526 U.S. at 845.  That petitioner
raised a claim of exclusion of evidence in his petition for review to the state high
court does not compel a different result because the claim in that petition did not
concern the same evidence at issue in the instant claim.  See Kelly v. Small, 315
F.3d 1063, 1067-69 (9th Cir. 2003) (exhaustion requires that specific factual
basis of claim be presented to highest state court).  Petitioner's instant claim will
be denied on the merits because it is clearly meritless.  See 28 U.S.C. §
2254(b)(2).

The exclusion of evidence may implicate a defendant's constitutional
rights to due process and to present a defense, rights originating in the Sixth and
Fourteenth Amendments.  Holmes v. South Carolina, 547 U.S. 319, 324 (2006).
But petitioner's claim that the trial court failed to introduce into evidence
"articles of clothing and cell phone as requested by [him]" is without any
evidentiary support.  There is no indication in the record that petitioner ever

sought to introduce any article of clothing or a cell phone at trial.  Nor is there any indication in the record that there was a cell phone in petitioner's pocket at the time of the incident, or that petitioner was wearing two sets of clothing. Petitioner is not entitled to federal habeas relief on his wholly unsupported claim of exclusion of evidence.  See Jones v. Gomez, 66 F. 3d 199, 204-05 (9th Cir. 1995) (allegations not supported by specific facts do not warrant habeas relief).

The alleged excluded evidence also fails to instill "reasonable doubt" into the jury's finding that petitioner committed a lewd and lascivious act on a child under the age of fourteen in violation of California Penal Code section 288(a). The evidence in support of a guilty verdict was compelling.  Ten-year-old J. testified at trial that she woke up one morning to find something poking her back. She fell back asleep, but when she woke up again, she found her hand on petitioner's penis.  Petitioner was wearing his boxer shorts and pants, lying on his back besides her in the bed.  J.'s hand was on petitioner's erect penis over his boxer shorts.  Petitioner's hand was on J.'s hand, moving it up and down on petitioner's penis.  J. saw part of petitioner's penis sticking out of his clothing. She said "it was like hard and there was hair."  Rep. Tr. at 226.  Even if there was evidence that petitioner had a cell phone in his pocket and was wearing two sets of clothing, it cannot be said that the exclusion of said evidence had a substantial and injurious effect on the jury's verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  The alleged excluded evidence would have had little impact on the jury in light of the other compelling evidence presented at trial.

/

/

/

/

8

# CONCLUSION

After a careful review of the record and pertinent law, the court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:   08/04/09

CHARLES R. BREYER
United States District Judge

G:\CRBALL\2008\1151\Black, G1.merits.wpd

9